UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DAKOTA HILDEBRAND,

        Plaintiff,                      Case No. 1:22-cv-1228

v.                                      Honorable Jane M. Beckering

MARGARET OUELLETTE et al.,

        Defendants.

_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA). Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prisoner Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.  Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Medical Provider Margaret Ouellette and Health Care Unit Manager Nathan Mikel in their official and personal capacities. (ECF No. 1, PageID.2.)

Plaintiff alleges that he has a "documented medical history of diminished paraspinus muscle tone throughout the spine." (*Id.*) Plaintiff states further that he suffers from degenerative disc disease and "pes cavus" of the feet. (*Id.*) In 2016, Plaintiff was also diagnosed with moderate to severe spinal stenosis. (*Id.*, PageID.3.) He alleges that he needed surgery in 2016, and that his medical condition has become worse since then. (*Id.*)

Plaintiff was sentenced to the custody of the MDOC in 2019. (*Id.*) On April 3, 2022, he was rushed to the Promedica Regional Hospital in Coldwater for "excruciating lower back pain." (*Id.*) The attending emergency room physician recommended that Plaintiff receive an electromyography (EMG) within 10 days of discharge. (*Id.*) Plaintiff also mentions that he was discharged from the hospital with "all his medication to help with his pain." (*Id.*)

Plaintiff contends that since his return to LCF, Defendant Ouellette has "refuse[d] to honor all [medical] recommendations." (*Id.*, PageID.4.) Instead, she has "deferred all treatment to an alternate plan consisting of home exercise/physical therapy." (*Id.*) Plaintiff alleges that "as of this present day nothing has happened with [his] medical treatment." (*Id.*) Plaintiff wrote to Defendant Mikel about the "inadequate medical treatment," but alleges that Defendant Mikel "refuses to do anything to assist [Plaintiff] with [his] medical issues regardless [that it is] in black and white on [Plaintiff's] documents." (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his Eighth Amendment rights, the ADA, and the RA. (*Id.*, PageID.4–5.) He also asserts state law claims of gross negligence and intentional infliction of emotional distress. (*Id.*, PageID.6.) Plaintiff seeks declaratory relief, as well as compensatory and punitive damages. (*Id.*)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

A.     **ADA and RA Claims**

As noted above, Plaintiff asserts violations of the ADA and RA based upon his contention that Defendants have "exclud[ed] Plaintiff from receiving the benefits of medical treatment[] based on his disability." (ECF No. 1, PageID.5.) The Court presumes that these claims are brought pursuant to Title II of the ADA, 42 U.S.C. §§ 12131 *et seq.*, and Section 504 of the RA, 29 U.S.C. § 794(a).

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).[1] In order to state a claim under Title II of the ADA and Section 504 of the RA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA and the RA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with

---

[1] Similarly, § 504 of the RA provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson Cnty.*, 219 F.3d 555, 557 n.3 (6th Cir. 2000) (citing *Maddox v. University of Tenn.*, 62 F.3d 843, 846, n. 2 (6th Cir. 1995)).

a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Both Title II of the ADA and the RA apply to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs); *Diemond v. Mich. Dep't of Corr.*, No. 18-1344, 2018 WL 7890769, at *2 (6th Cir. Oct. 31, 2018) ("The ADA and RA do apply to state prisons."). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). Plaintiff has named Defendants in their individual and official capacities.

Plaintiff's factual allegations, however, fail to suggest that Defendants denied adequate medical treatment because of any disability that Plaintiff may suffer. As the United States Court of Appeals for the Second Circuit has explained, "[w]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'" *United States v. Univ. Hosp.* 729 F.2d 144, 157 (2d Cir. 1984). Indeed, that distinction explains why the ADA and the RA are not appropriate federal causes of action to challenge the sufficiency of medical treatment. *See, e.g.*, *Baldridge-El v. Gundy*, No. 99-2387, 2000 WL 1721014, at *2 (6th Cir. Nov. 8, 2000) ("[N]either the RA nor the ADA provide a cause of action for medical malpractice."); *Centaurs v. Haslam*, No. 14-5348, 2014 WL 12972238, at *1 (6th Cir. Oct. 2, 2014) ("Although [Plaintiff] may have a viable civil rights claim under 42 U.S.C. § 1983 for inadequate medical care, he has failed to state a prima facie case under the parameters of the ADA."); *Powell v. Columbus Medical Enterprises, LLC*, No. 21-3351, 2021 WL 8053886, at *2 (6th Cir. Dec. 13, 2021) ("This dissatisfaction necessarily sounds in medical malpractice,

5

which, 'by itself, does not state a claim under the ADA.'").[2] Plaintiff, therefore, has failed to state claims against Defendants for violations of the ADA and RA, and such claims will be dismissed.

B. **Section 1983 Claims**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted above, Plaintiff contends that Defendants violated his Eighth Amendment rights by failing to provide adequate medical care for Plaintiff's back problems following his discharge from the hospital.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care

---

[2] See also *Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) ("Iseley . . . claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions."); *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) ("The ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'"); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he [ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners."); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("[A] lawsuit under the Rehab Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions."); *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("[I]t is well settled that the ADA [and the RA do] not provide a private right of action for substandard medical treatment." (internal quotation marks omitted)); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) ("The Rehabilitation Act, like the ADA, was never intended to apply to decisions involving . . . medical treatment.").

would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005)

(holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state

8

> a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v.*

*Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff's allegations suffice to show that he has serious medical needs. His allegations fall short, however, with respect to Defendants' responses to his needs. Plaintiff first suggests that Defendants violated his Eighth Amendment rights when Defendant Ouellette failed to "honor all recommendations" made by the attending emergency room doctor. (ECF No. 1, PageID.4.) Plaintiff alleges that the attending doctor recommended that Plaintiff receive an EMG. (*Id.*, PageID.3.) Plaintiff also references that he was discharged from the hospital with medication for pain. (*Id.*) He contends that Defendant Ouellette did not honor these recommendations and instead "deferred all treatment to an alternate plan consisting of home exercise/physical therapy." (*Id.*, PageID.4.) However, the fact that Defendant Ouellette differed in her approach to Plaintiff's treatment plan from that recommended by the attending emergency room doctor is insufficient to establish deliberate indifference that rises to the level of an Eighth Amendment violation. *See Trozzi v. Lake Cnty., Ohio*, 29 F.4th 745, 759 (6th Cir. 2022) (noting that "a mere difference of opinion about the proper course of treatment . . . is not enough to establish deliberate indifference"). Specifically, "a prison physician's decision to reject another doctor's treatment recommendation in favor of his [or her] own 'does not amount to deliberate indifference where both recommendations are made by qualified medical professionals' and the prison doctor's decision [wa]s made for a medical reason." *Lloyd v. Moats*, 721 F. App'x 490, 495 (7th Cir. 2017) (citing *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 797 (7th Cir. 2014); *Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015)); *see, e.g.*, *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (finding that "inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise independent medical judgment" (citation

10

omitted)). That is, if doctors use their own medical judgment, then they are "free to devise [their] own treatment plan." *Lloyd*, 721 F. App'x at 495 (citing *Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012)).

Plaintiff also appears to suggest that Defendants are responsible for any delay Plaintiff has experienced in receiving care under the "alternate medical treatment plan." (ECF No. 1, PageID.4.) Plaintiff contends that "as of this present day nothing has happened with my medical treatment." (*Id.*) Plaintiff's complaint, however, is devoid of any facts from which the Court could infer that this delay is attributable to Defendants.[1] Moreover, although Plaintiff alleges that he wrote to Defendant Mikel "concerning this matter" and Defendant Mikel "refuses to do anything" (*id.*), Plaintiff has not alleged any facts suggesting that Defendant Mikel received his kite and was aware of the situation. Section 1983 liability cannot be imposed simply because Defendant Mikel failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Plaintiff's complaint is also devoid of facts suggesting that he notified Defendants during the delay about any possible worsening of his condition, and that Defendants ignored this information. Nor does Plaintiff allege that Defendants ignored any urgent requests for treatment that Plaintiff may have made.

In sum, Plaintiff has failed to allege facts suggesting that Defendants were deliberately indifferent to his medical needs. Instead, Plaintiff's complaint establishes, at most, that Defendants have set forth a different treatment plan for Plaintiff than the one recommended by the attending emergency room physician. Moreover, Plaintiff's complaint is devoid of facts suggesting that Defendants are personally responsible for any delays he has experienced in receiving care pursuant

---

[1] This does not mean that the delay is appropriate or that the delay does not potentially evidence deliberate indifference to a serious medical need. It simply means that Plaintiff has failed to allege facts that support an inference that Defendants are responsible for the delay.

11

to that plan. Plaintiff simply has not shown that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller*, 408 F.3d at 819 (quoting *Waldrop*, 871 F.2d at 1033). The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims against Defendants.

### C. State Law Claims

Plaintiff also asserts state law claims of gross negligence and intentional infliction of emotional distress against Defendants. (ECF No. 1, PageID.6.) Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, the Court will dismiss Plaintiff's state law claims without prejudice.

**Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over those claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: January 23, 2023            /s/ Jane M. Beckering
                                   Jane M. Beckering
                                   United States District Judge